UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| James L. Wilson, ) | Civil Action No.: 5:03-4164--RBH |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | **O R D E R** |
| Phoenix Specialty Mfg. Co., Inc. ) | |
| ) | |
| Defendant. ) | |

Pending before the Court are the motions by the defendant, Phoenix Specialty, for summary judgment and to strike an exhibit attached to the plaintiff's memorandum in opposition to summary judgment.

### Background Facts and Theories of Case

This is an employment discrimination case arising from the termination of the plaintiff ("Wilson") from his employment with the defendant ("Phoenix"). Wilson became employed with Phoenix in 1988 as the supervisor of the shipping department and held that position until he was terminated in August of 2002. In approximately 1998, Wilson was diagnosed with Parkinson's Disease. He contends that he was terminated in violation of ERISA, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and state contract law. Defendant moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on the basis that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. Defendant contends that the termination was part of a reduction in force due to the downturn of the economy.

### Legal Standard on Motion for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id., quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In this case, the defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Commrs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986)). If the defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry, Insurance Inc., 877 F. Supp. 1002, 1005 (E.D. Va 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way

2

of affidavits (*see* Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial.  Baber, 977 F.2d 872, citing Celotex Corp., supra.

Summary judgment should only be granted in those cases where there is no issue of fact involved and inquiry into the facts is not necessary to clarify application of the law.  McKinney v. Board of Trustees Mayland Community College, 955 F.2d 924 (4th Cir. 1992).  A district court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under the circumstances."  Campbell v. Hewitt, Coleman & Assoc., 21 F.3d 52, 55 (4th Cir. 1994).

Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues.  Ballinger v. North Carolina Agric. Ext. Serv., 815 F.2d 1001, 1005 (4th Cir.1987, cert. denied, 484 U.S. 897 (1987).

## Discussion

**ERISA**

Wilson's claim under ERISA is brought under 29 U.S.C. §1140, Section 510.  The Complaint alleges that he was fired "because of his health problems"and the "effect that these health problems had on the defendant's premium rates for its health insurance." It further alleges that the termination "was specifically geared towards denying Plaintiff the opportunity to be enrolled in the Defendant's health insurance E.R.I.S.A. benefit plan."(Complaint, Paragraph XI) The defendant contends that summary judgment should be granted on the ERISA claim on the basis that the plaintiff has not shown any evidence of specific intent to interfere with his ERISA rights and that, even if a prima facie case is shown, the plaintiff cannot prove that the legitimate, nondiscriminatory reasons given by Phoenix for the discharge were pretextual.

Section 510 of ERISA makes it unlawful for any person to discharge, discipline or discriminate against a participant or beneficiary "for exercising any rights to which he is entitled under the provisions of an employee benefit plan. . . **or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan**. . . " §510, 29 U.S.C. § 1140. (emphasis added)  To prevail on his ERISA claim, the plaintiff need only "adduce facts, which if taken as true, could enable a jury to identify unlawful intent from other various reasons why an employer might have terminated the plaintiff, and to conclude that the employer harbored the requisite intent." Conkwright v. Westinghouse Electric Corp., 933 F.2d 231, 239 (4th Cir. 1991).  A plaintiff may utilize direct proof if available or, if not, the "McDonnell Douglas scheme of presumptions and shifting burdens of production." Id.

The plaintiff contends that the employer had increased insurance costs due to the plaintiff's employment.  Phoenix purchased excess loss ("stop loss") coverage from Companion Life Insurance Company to cover claims which exceed an agreed-upon cap.  Plaintiff explains that "stop loss" coverage is a special type of insurance coverage for entities like the defendant who have self-funded health benefit plans which is intended to reimburse a employer for claims paid in excess of an agreed amount. Effective December 1, 2001, Companion added a preexisting condition clause excluding coverage for claims for illness during the twelve month period prior to "the later of the Effective Date of the Contract and the date the Covered Person became covered under the Employee Benefit Plan." Plaintiff contends that the preexisting condition clause applies to him, since he received treatment for his illness during the twelve-month period prior to the effective date of the contract.  Therefore, the company allegedly could not be reimbursed for Wilson's medical expenses from the stop loss plan effective December 1, 2001.

The defendant has submitted the Affidavit of Brandon Guest, the insurance broker for Phoenix

4

Specialty. According to this affidavit, the preexisting condition rider did not apply to current employees such as Wilson, but only to new employees hired after the effective date of the policy.

The Court finds that, even if the defendant's interpretation of the contract is correct, the plaintiff contends that the employer sought to reduce its health care costs for the plan as a whole, including the self-funded portion. Therefore, it is not necessary for the Court to decide the meaning of the pre-existing clause of the insurance contract at the summary judgment stage.

Plaintiff also asserts that Hurst, the company President, had access to all of the detailed invoices of the health benefits plan and that he maintained a color-coded log regarding Wilson's medical treatment highlighting the higher claims.

> [T]he blue were his more local doctor visits that we had bills for and the yellow was the larger out-of-town items and then I took that information and compared it to this information here and put it together on the calendar.

(Hurst depo., p. 94)

Hurst also admitted that he is intimately involved in the cost negotiation for the health, disability, and life insurance. (Hurst depo. at 23) However, he denied in his deposition that he considered the health insurance costs of Wilson. To the contrary, Ray Squires, one of the defendant's officers, stated that health insurance costs were discussed on a monthly basis at officer meetings. (Squires depo., p. 35-35) Plaintiff also argues that Hurst may not have answered all questions truthfully. For example, he denied being asked medical questions by his insurance carriers, but Exhibit P was a "Supplemental Claims Information" Form which his company completed. This form specifically asks: "Are there any employees or dependents who have been or expect to be treated for a serious medical condition?" The answer given on the form dated October 4, 2001 was "no".

Plaintiff further notes that the month of August 2002, when he was terminated, produced the highest amount of claims in a single month during the year 2002 and that Hurst held a meeting shortly

before he terminated Wilson regarding cost concerns, where he specifically referred to health care costs. See Affidavits of Banks and Wilson.

The record thus contains circumstantial evidence which may support a prima facie case of specific intent to interfere with Wilson's rights under ERISA, section 510. The record also contains sufficient evidence to withstand a motion for summary judgment that the reasons given by Phoenix for the plaintiff's termination were pretextual. Phoenix presents several reasons which it contends are legitimate and non-discriminatory for the discharge. Specifically, the employer takes the position that the discharge was part of a reduction in force due to decreased sales and was due to Wilson's problems with a new computer system and the company's reduction of supervisory positions.

Plaintiff asserts that, although the defendant claims that his position which paid about $46,000 annually was eliminated as a cost-saving strategy due to falling sales, there is evidence that the company met its monthly sales goal of $1,000,000 in July of 2002; that the officers actually received a raise two months later; and that the company paid bonuses to employees.[1]

Regarding the reason for discharge that Wilson had problems learning a new computer program (Visual), the record contains evidence that Ray Squires, a vice president, required training for a year on the new program, so it would not be unreasonable for the plaintiff to continue to have problems with the program for nine months. Further, evidence taken in a light most favorable to the plaintiff reveals that when Wilson attempted to key in orders to practice on the system, Hurst advised him to let other employees do it "because if he made a keystroke and keyed it in wrong, chances are we'd lose that box and not find it again . . ." (Hurst Depo., page 35)

Finally, the defendant contends that employee Hogan was already performing many of Wilson's

---

[1] Plaintiff's evidence also reveals that a corporate sale occurred in October of 2002 and that the corporate officers had been considering a sale since the end of 2001. See Wilson Affidavit.

job functions, including running shipping meetings. However, factual issues are present regarding this contention, since Hogan and Wilson both deny that she ever ran shipping meetings while Wilson was the manager. (Hogan Depo., page 45; Wilson Affidavit) Therefore, based on the above evidence, the Court finds that the plaintiff has produced sufficient evidence of pretext to withstand a motion for summary judgment under the McDonnell Douglas framework.

**Violation of ADA**

To establish a prime facie case of wrongful discharge on the basis of the Americans with Disabilities Act, a plaintiff must show by a preponderance of the evidence that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met the employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001). To establish a prima facie case for failure to accommodate, an employee must show: (1) he was an individual with a disability within the meaning of the ADA; (2) the employer had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the position; and (4) the employer refused to make such accommodations. Rhoads v.FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001) cert. denied, 535 U.S. 933 (2002). Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation. 29 C.F.R. § 1630.2(o)(3). If the defendant failed to engage in the interactive process in good faith, this can be found to be a failure to accommodate.

The defendant contends that Wilson is not a "qualified individual with a disability" since his doctor considered him to be "fully functional".

The applicable regulations provide that a person has a covered disability under the ADA if he

has one of the following:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. §12102(2).

> "Physical or mental impairment" is defined as:
>
> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 CFR 1630.2(h) (emphasis added)

The regulations also define the term, "Major Life Activity." "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. at (I). Additionally, depression is recognized as an impairment. Baird ex rel. Baird v. Rose, 192 F.3d 462, 467 n. 3 (4th Cir. 1999). The phrase "major life activities" refers to "those activities that are of central importance to daily life," Toyota Motor Manufacturing, Kentucky, Inc., v. Williams, 534 U.S. 184, 197 (2002), and "that the average person in the general population can perform with little or no difficulty," Pack v. Kmart Corp., 166 F.3d 1300, 1305 (10th Cir.1999); accord, EEOC v. Sara Lee Corp, 237 F.3d 349, 352-53 (4th Cir. 2001). An impairment's impact on a major life activity must be "permanent or long-term." Toyota Motor, 534 U.S. at 198.

Dr. Bergmann testified that Plaintiff's Parkinson's Disease has no cure, is chronic and will progressively worsen over time. (Bergmann Affidavit). However, his deposition testimony could be construed as opining that the plaintiff has "full functional capacity". (Bergmann Depo., p. 11)

8

Nevertheless, the plaintiff avers, and Dr. Bergmann affirms, that Wilson suffers limitations in daily activities such as urination and sleep. (Wilson Depo., p. 135; Wilson Affidavit, paragraphs 7-8; Bergmann Affidavit, paragraph 6). Plaintiff also allegedly suffers from depression, fatigue, vision impairment, communication difficulties, motor difficulties and anxiety. (Wilson Affidavit, paragraphs 7-8; Bergmann Affidavit, paragraph 6). Bergmann and Plaintiff attribute all of these symptoms to Plaintiff's Parkinson's Disease.

On the other hand, the defendant asserts that the plaintiff is able to work as a substitute teacher two to four days per week; volunteer in the community; drive a motor vehicle; assist with sports teams; and play golf with a handicap of 18. (Wilson Depo., pp. 12 and 17)

Even if the plaintiff's case may be weak under subsections (A) and (B) of the ADA, the plaintiff has adduced evidence sufficient to withstand a motion for summary judgment that the defendant regarded him as having an impairment that substantially limits one or more major life activities pursuant to 42 U.S.C. §12102(2)(C). Under the "regarded as" prong of the regulations, the employer's state of mind and intent are questions to be resolved, and summary judgment is rarely appropriate. See Ross v. Campbell Soup Co., 237 F.3d 701, 706 (6th Cir. 2001).

An e-mail was introduced into evidence from Ms. Crystal Baxley, HR assistant, to Mr. Hurst dated June 2, 2001 which states: "If Jimmy's condition continues to deteriorate--will we have to put him on Family and Medical Leave." Hurst responds:

> Eventually we will . . . since he is salary we have some descression(sic) as to when we assign him FMLA . . . but if he can not do his job/return to work/ then its FMLA time. . . **Jimmy's case is going to be complex since he qualifies for ADA designation and we will have to consider accommodations**. . .  (emphasis added)

Under the ADA, a covered disability may be found where the employer believes "that one has a substantially limiting impairment that one does not have or that one has a substantially limiting

9

impairment when, in fact, the impairment is not so limiting." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). ". . . Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." Id.

The e-mail referenced hereinabove indicates a belief by the employer that the plaintiff had a covered disability under the ADA. Therefore, the evidence is sufficient to withstand the motion for summary judgment.

**ADEA Claim**

The ADEA makes it unlawful for an employer "to discharge any individual ...because of such individual's age." 29 U.S.C.A. § 623(a)(1). An ADEA claim may be established through two alternative methods of proof: (1) a "mixed-motive" framework, requiring evidence that the employee's age motivated the employer's adverse decision, or (2) a "pretext" framework identical to the McDonnell Douglas burden-shifting analysis used in Title VII cases. EEOC v. Warfield-Rohr Casket Co., 364 F.3d 160, 163-164 (4th. Cir. 2004).

The McDonnell Douglas approach requires proof for a prima facie case that "(1) (the plaintiff) is a member of the protected class; (2) he was qualified for the job and met (the company's) legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by a substantially younger individual with comparable qualifications." Warch v. Ohio Casualty Insurance Co., 435 F.3d 510, 513 (4th Cir. 2006). "After the plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the termination." Id. at 513-14. Then, if the employer produces a legitimate, non-discriminatory reason for the discharge decision, the plaintiff must prove that the reason given was pretextual.

**A. Reduction in Force**

In the case at bar, Phoenix alleges that Wilson was fired during a reduction in force. For cases involving a reduction in force where performance is the announced basis for selection, the Fourth Circuit has recognized a variation on the McDonnell Douglas framework. In these cases, the employee must show:

> (1) he was protected by the ADEA; (2) he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force including some persons in the group who were substantially younger than him and who were performing at a level lower than that at which he was performing.

Stokes v. Westinghouse Savannah River Co., 206 F.3d 420, 430 (4th Cir. 2000).

Unlike the plaintiff in Stokes, the plaintiff in the case at bar does not acknowledge that a reduction in force occurred. When viewed in a light favorable to the plaintiff as required by the summary judgment standard, the facts of the case do not support a finding that Wilson's discharge was part of a reduction in force. The plaintiff's evidence showed that only two or three individuals out of at least ninety employees were targeted for discharge. (See Hurst Depo. at page 104).[2] Therefore, the Court will analyze the motion for summary judgment for the ADEA claim under the McDonnell Douglas framework.

In the case at bar, the plaintiff presents its case under both the "mixed motive" and the McDonnell Douglas analysis. Under a "mixed motive" approach, a plaintiff must show that age was one of the reasons for the termination, "even though it was not the sole motivating factor." See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277 (4th Cir. 2004). It is not clear whether a

---

[2]The record contains a typewritten document entitled "Notes Concerning the Reduction of Two (2) Supervisor Positions" that refers to a "reduction in management" and references the elimination of two salaried positions, Shipping Manager (Wilson) and Press Room Manager (Eddie Williams.

plaintiff may proceed under a "mixed motive" approach without showing direct evidence of discrimination. See Mereish v. Walker, 359 F.3d 330 (4th Cir. 2004). "Direct evidence" is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999). A plaintiff must also show a nexus between the statement that "reflects a discriminatory attitude" and the adverse employment action. Isolated comments which are not related to the discharge lack the required nexus. Warch, 435 F.3d at 520.

It is questionable whether the plaintiff has sufficient evidence of age discrimination under a "mixed motive" claim[3]. However, the Court finds that he has shown sufficient evidence as to the McDonnell Douglas framework to create a genuine issue of material fact.

**Proof of Pretext under McDonnell-Douglas analysis**

The defendant takes the position that Wilson has not produced evidence from which a fact-finder could conclude that the non-discriminatory reasons given by the company are pretextual. However, Wilson alleges that two or three supervisors over the age of forty were removed and replaced with younger employees. He alleges that, before terminating Wilson and Williams, Hurst instructed Wilson to hire another shipping clerk. Wilson recommended two candidates for the position. One man was rejected by Hurst because he "wouldn't be with us long" since he would, in Hurst's judgment, retire in a few years. On June 28, 2002, after consulting legal counsel, Hurst hired twenty-five year old Stacie Nix as a shipping clerk. (Hurst Depo., page 115; Wilson Depo., page 117) Nix began work during the second week of July after a pre-planned vacation. On August 1, 2002, Hurst allegedly held

---

[3] For example, the plaintiff relies on the calculation made by Hurst on the resume of Keith Gavin at the time he was hired as direct evidence. However, this evidence appears to lack the required nexus with the plaintiff's termination since Gavin was apparently hired in 1995. (He was terminated in 2001.) See list of terminated employees.

a meeting with the staff explaining the company's "financial crunch". (Affidavit of Janie Banks) That afternoon, the defendant terminated Wilson. The next day, it created a new position of "shipping foreman" which had the same duties as "shipping manager", according to Hogan, who took the position. (Hogan Depo., page 37) Less than two weeks after Wilson's termination, the defendant posted an internal job opening for a shipping clerk. Wilson applied for the position, but the company took down the posting.

As discussed hereinabove, the plaintiff also presented evidence of pretext as to the other business reasons asserted by the employer for the plaintiff's discharge. Therefore, the Court finds that the plaintiff has presented sufficient evidence under the McDonnell Douglas analysis to withstand summary judgment on the ADEA claim.

**Breach of Contract and Breach of Contract With Fraudulent Act based on Employee Handbook**

The plaintiff contends that the termination of his employment breached his contract with the defendant as memorialized in the employee handbook.[4] This issue presents a close question.

Phoenix first asserts that, since the plaintiff has remedies under ERISA, ADA, and ADEA, he should be limited to those remedies. Defendant cites the South Carolina case of Dockins v. Ingles Markets, Inc., 306 S.C. 496, 413 S.E. 2d 18 (1992), holding that "when a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy." Id., 413 S.E.2d at 490. The Court finds the Dockins case to be distinguishable. That case involved a state law claim for the tort of wrongful discharge in violation of public policy. The cause of action was one in tort and thus similar to the federal claim which was available for an improper

---

[4] The plaintiff has recognized that the recent South Carolina Court of Appeals decision of RoTec Services Inc. v. Encompass Services, 359 S.C. 467, 597 S.E.2d 881 (Ct. App. 2004) held that a breach of covenant of good faith and fair dealing claim in an employment context is not independent from the breach of contract claim.

discharge resulting from filing a complaint under the Fair Labor Standards Act. The cause of action herein is one premised upon an alleged contract. Therefore, a plaintiff may allege a cause of action for breach of contract as well as the federal employment law claims.

The defendant next contends that its handbook does not create a contract as a matter of law, citing Hessenthaler v. Tri-County Sister Help, Inc., 365 S.C. 101, 616 S.E.2d 694 (2005). In that case, the court held that the disclaimer was conspicuous as a matter of law since it was printed in bold, capitalized letters on the first page of the handbook. The court further held that the handbook did not contain any promissory language altering the employment at will relationship and thus did not constitute a contract.

In the case at bar, the disclaimer appears on the first page after the table of contents but on the third page of the handbook and states in bold print, without capitalization:

> **This manual provides general information only. It does not constitute an agreement or contract of employment of any kind, express or implied. Your employment is "at-will." Both you and Phoenix Specialty have the right to terminate employment at any time for any reason without prior notice or warning. The provisions of this manual may be amended or changed at any time without notice, but only in writing by the Company President.**

This disclaimer was arguably conspicuous, since it appeared on the first page of the substantive part of the handbook, in bold print. The handbook states that employees who engage in "improper conduct **will** be subject to corrective action . . ." (emphasis added) It also states that South Carolina is an employment- at-will State and that the company "**will** address unsatisfactory performance without regard to an individual's . . . age . . . or disabilities . . . "(emphasis added) "Phoenix Management **will** review corrective action procedures to ensure fair treatment of all Employees." Finally, it states that, "in determining the appropriate level of corrective action, offenses are to be considered cumulative . . ." However, the handbook also states that corrective action "**may**" have from one to four steps and

14

management "**reserves the right** to bypass any of these steps." (Section 4.6, Code of Conduct and Corrective Action, emphasis added)

"The entire handbook, including any disclaimer, should be considered in determining whether the handbook gives rise to a promise, an expectation and a benefit." Fleming v. Borden, Inc., 316 S.C. 452, 460, 450 S.E. 2d 589, 594 (1994). Where a handbook contains permissive as well as mandatory language, a question of fact is created. Jones v. G.E. Co., 331 S.C. 351, 364-65, 503 S. E. 2d 173, 180-81 (Ct. App. 1998).

Phoenix also contends that the plaintiff has failed to adduce facts to support his claim for breach of contract accompanied by a fraudulent act. "Fraudulent act is defined as any act characterized by dishonesty in fact or unfair dealing." RoTec Services, Inc. Encompass Services, Inc., 359 S.C. 467, 597 S.E.2d 881, 883 (Ct. App. 2004). Plaintiff alleges that the "concocted" reasons for discharge constitute fraudulent acts.

While the Court believes that these breach of contract claims may be weak, the Court notes that the parties have requested this matter be heard non-jury, and at this juncture, looking in the light most favorable to the plaintiff, there appears to be sufficient evidence to withstand summary judgment at this time.

The plaintiff has agreed that its Sixth cause of action for breach of the covenant of good faith and fair dealing should be dismissed based on the recent RoTec Services case from the South Carolina Court of Appeals.

**Defendant's Motion to Strike**

The defendant has moved to strike docket entry [59-6], which was a part of a memorandum of law from another United States District Court case against the defendant. The Court agrees that inclusion of this document was improper, and the motion to strike is granted.

**Conclusion**

Based on the briefs and information submitted, I find as a matter of law that there are genuine issues of material fact as to the plaintiff's first through fifth causes of action. At this stage, it is not the Court's function to weigh the evidence, but rather to determine whether there is a genuine issue of fact which justifies a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The sixth cause of action is hereby dismissed.

For the foregoing reasons, the undersigned **GRANTS IN PART AND DENIES IN PART** the defendant's motion for summary judgment. The defendant's motion to strike is **GRANTED**.

Upon receipt of this Order, the parties shall contact the Court immediately for a conference call regarding the scheduling of a bench trial.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Court Judge

March 28, 2006
Florence, South Carolina